
IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
December 8, 2020 Session

**A.W. v. M.N.**

**Appeal from the Juvenile Court for Tipton County**
**No. 16-JV-219       Rachel J. Jackson, Judge**

_____

**No. W2020-00091-COA-R3-JV**

_____

This case involves a petition to modify a father's parenting time. The mother filed the petition against the father, alleging that the father sexually abused their minor child during an unsupervised visitation. After a two-day hearing, the trial court denied the mother's petition, finding that there was insufficient evidence to show that the father sexually abused the minor child. The mother appealed. We affirm the trial court's decision and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Mary Morgan Whitfield, Memphis, Tennessee, for the appellant, A.W.[1]

David W. Camp, Jackson, Tennessee, for the appellee, M.N.

**OPINION**

**I.      FACTS AND PROCEDURAL HISTORY**

This case involves an allegation of sexual misconduct by M.N. ("Father") against his biological child A.W. ("Child"). After learning of the alleged abuse, A.W. ("Mother"), the biological mother of Child, filed an emergency petition to suspend Father's parenting

_____

[1] In actions involving a juvenile, the policy of this Court is to protect the privacy of children by using either the first name and last initial or, in some cases, just the initials of the parties. *See In re Braden K.*, No. M2020-00569-COA-R3-PT, 2020 WL 5823344, at n.1 (Tenn. Ct. App. Sept. 30, 2020); *In re C.W.*, 420 S.W.3d 13, 15 n.1 (Tenn. Ct. App. 2013).

time with Child.

According to Mother, she first met Father when she was a high school student and Father was a teacher and football coach at the school.[2]  While Mother was still attending high school, Father resigned from his employment, and they lost contact with each other. Several years later, they reinitiated contact and began a sexual relationship.

In March 2015, Mother became pregnant while she was living with her parents in Tipton County, Tennessee.  In November 2015, Child was born out of wedlock in Shelby County, Tennessee.  For the first several months of Child's life, Mother continued to live in Tipton County with Child.  In early 2016, Mother and Child moved in with Father in Southaven, Mississippi, and Mother and Father ("Parents") were married in Mississippi.

Parents were married only a few months before they separated.  In July 2016, Mother and Child moved out of Father's home in Mississippi and returned to Tennessee. Father continued to live in Mississippi.  Also in July 2016, Mother's four-year-old daughter from a prior relationship reported that Father sexually abused her.  A few months after Mother moved out, Father filed a complaint for divorce in Desoto County, Mississippi.[3]

As a result of the allegations made by Mother's older daughter, in November 2016, Mother filed an emergency petition in the Tipton County Juvenile Court to, in part, restrict Father's visitation with Child.  Father responded by denying the allegations in the petition and by requesting that the trial court approve his proposed temporary parenting plan.  The trial court heard the petition on July 24, 2018 and determined in an oral ruling that there was insufficient evidence to sustain Mother's allegations of sexual abuse by Father.  The trial court named Mother as the primary residential parent of Child and incorporated a permanent parenting plan into its order.  Under the parenting plan, Father was granted visitation with Child pursuant to a progressive visitation schedule.  Initially, Father's visitation would be supervised and for short durations twice per week.  Over time, Father's visitation would be for longer periods and eventually without supervision.  As specified in the parenting plan, Father was also ordered to pay Mother monthly child support.  Although the trial court heard Mother's petition on July 24, 2018, a written order approving and incorporating the permanent parenting plan was not entered until October 22, 2018.[4] Despite this delay, Parents began following the visitation schedule under the plan after the hearing on the petition.

On October 13, 2018, Father had an unsupervised visit with Child, who was two-years-old, in Southaven, Mississippi.  After the visit, Parents met and Child returned to

---

[2] Mother is over 20 years younger than Father.

[3] It appears that Parents' divorce was finalized in 2018; although the exact date is unclear from the record.

[4] The written order approving the parenting plan is included in the record; however, the record does not include a transcript or statement of the evidence from the proceeding on July 24, 2018.

Mother's care. During this interaction, Mother claims that Father informed her that he gave Child a bath because she played in sand during the visit. Despite this comment by Father, according to Mother, Child was wearing the same clothes as before the visit, Child did not smell like she had taken a bath, and Child's hair was not wet. When Mother and Child returned home, Mother began preparing Child for bed.

As Mother began preparing Child for bed, Mother noticed that Child did not have sand in her hair or behind her ears. She claims that when Child played in sand on previous occasions, sand would stick in her hair even after a bath. Mother claims that she also noticed a bodily fluid on the inside of Child's underwear that she had not seen before. While Mother was changing Child's clothes, without being prompted, Child reportedly stated that "Daddy hurt me. Daddy hurt my coo-coo." According to Mother, Child was referring to her vaginal area when she made this statement. After hearing Child's statement, Mother called Child's maternal aunt and maternal grandmother into the room, and Child repeated the statement. The grandmother instructed Mother to take Child to LeBonheur Children's Hospital in Memphis for an evaluation.

On the way to the hospital, Mother claims that she called Father for him to explain Child's statement. According to Mother, Father did not provide a cohesive or responsive explanation.

Mother and Child arrived at LeBonheur Children's Hospital at approximately 9:45 PM on October 13, 2018. At the hospital, Child repeated her statement to several members of the medical staff, including the examining doctor. The doctor's medical notes indicate that when Child was asked how she was hurt, Child stated that Father wiped her with a towel. The examining doctor conducted a physical examination of Child. After the examination, the doctor concluded that there were no obvious signs of trauma but noted that trauma may have still taken place. The doctor informed Mother that, because the alleged assault was recent, a forensic examination of Child was urgent. Because the alleged abuse occurred in Southaven, Mississippi, the hospital staff contacted the Southaven Police Department and the Mississippi Department of Human Services. While Mother and Child were still at the hospital, Detective Tyler Price of the Southaven Police Department spoke with Mother. Mother provided Detective Price with Child's underwear for forensic processing.

A few days after the alleged actions by Father, Theresa Cook of the Tennessee Department of Children's Services interviewed members of the family at Mother's home. Ms. Cook's interview with Child took place in private. Ms. Cook reported that during the interview, without being prompted, Child repeated the allegation about Father and pointed to her vaginal area. After interviewing Child and other members of her family, Ms. Cook contacted Detective Price and the Southaven office for Mississippi's Child Protective Services. According to Ms. Cook, both Detective Price and Child Protective Services stated that they were aware of Child's case and had a report on file. Although Ms. Cook

was initially involved, Child's case was administratively closed by the Tennessee Department of Children's Services on October 23, 2018 because the alleged abuse occurred in Mississippi.

As a result of Child reporting that Father hurt her vaginal area, on October 17, 2018, Mother filed an emergency petition with the trial court to suspend Father's parenting time. In her petition, Mother detailed Child's statements of the alleged abuse. Mother also claimed that Father's alleged sexual assault against Mother's older daughter supported suspending Father's parenting time with Child. Mother asked the trial court to suspend Father's parenting time until a full investigation could be conducted on the new allegations. In the alternative, Mother asked the court to modify Father's parenting time.

On October 22, 2018, the trial court entered an order on Mother's emergency petition, suspending Father's parenting time while the alleged abuse was being investigated.[5]

On October 30, 2018—seventeen days after the alleged incident—a forensic interview was conducted with Child at Healing Hearts Child Advocacy Center in Southaven, Mississippi. Child was interviewed alone by an employee of Healing Hearts. The interviewer used pictures to ask Child about different parts of the body. After identifying several body parts, Child was asked whether anyone had ever hurt different parts of her body. Child responded that Mother had hurt her eyes, nose, and "bottom." When asked about her vaginal area, Child stated that both Mother and Father hurt her by wiping her with a towel. The interviewer also asked if anyone had asked Child to "keep a secret," and Child responded by wanting to leave the room to "ask Mommy." The interview concluded after Child left the room.

On February 11, 2019, Father answered Mother's emergency petition to suspend his parenting time. Father denied the allegations and asked the court to dismiss Mother's petition. In their respective filings, Parents each asked the court to award them attorneys' fees for having to file or respond to the petition.[6]

The trial court heard Mother's emergency petition on April 18, 2019, and November 19, 2019. Several witnesses testified at the initial hearing, including Ms. Cook, Child's maternal grandmother, Mother, and Father. The grandmother's testimony focused on Child reporting the alleged incident in October 2018. The grandmother testified that when Child returned from her visit with Father, she was abnormally quiet and reserved. The

---

[5] This order was entered on the same date that the court also entered its written order from the July 24, 2018, hearing.

[6] Before Father's response, Mother also filed a petition for civil contempt against Father, claiming that he willfully refused to pay child support in accordance with the court's prior orders. Father's answer also included a petition to change Child's surname. The Court denied Mother's petition for civil contempt and Father's petition to change Child's surname. Parents do not challenge these issues on appeal.

- 4 -

grandmother also testified that when Mother called her into Child's room that night, Child repeated the statement about father injuring her vaginal area.

During the grandmother's testimony, counsel for Mother asked whether this alleged incident was the first time that she had learned Father was accused of sexual assault. Counsel for Father objected to this line of questioning, claiming that any prior accusations were irrelevant to the current issues. The trial court sustained the objection and prohibited Mother from making an offer of proof, stating that the prior accusations were not relevant to the current proceeding.

Mother testified on her prior relationship with Father and on the circumstances surrounding the alleged incident between Father and Child. When Mother was questioned on Father's previous relationships with other young women, counsel for Father objected again, arguing that the topic was irrelevant. Counsel for Mother renewed her request to make an offer of proof on the issue, and the trial court allowed her to make an offer of proof while Mother testified. Mother alleged that, in the past, Father had relationships with young women and that her oldest daughter claimed that he sexually abused her. After making her offer of proof on this issue, Mother discussed many of the events that took place at the hospital on the day of the alleged incident, including that the tests conducted by the Southaven Police Department on Child's underwear were still being processed.

At the close of Mother's proof, Father moved to dismiss Mother's petition. Based on the lack of physical evidence of abuse, the trial court indicated that there was insufficient evidence to grant Mother's petition. Specifically, the court noted that the medical exam of Child did not yield significant findings, that there was no proof that a forensic interview was conducted with Child, and that there was no indication that an agency in Mississippi was still investigating the allegations. Additionally, the court stated that, based on Child's young age, the court could not affirmatively determine what Child meant by her statements. Mother asserted that there was additional proof but that agencies in Mississippi were deficient in their investigations of the case. As a result, the trial court reserved its ruling on Father's motion to dismiss and granted Mother 30 days to provide proof that Child Protective Services or law enforcement in Mississippi was continuing to investigate the claims.

Father testified after the trial court granted Mother 30 days to gather additional evidence from Mississippi. His testimony focused on the issues related to Mother's petition for civil contempt and his petition to change Child's surname. The parties' claims for attorneys' fees were reserved for the next hearing.

Before the next hearing on November 19, 2019, Detective Price was deposed, the results of the forensic testing of Child's underwear were processed, and a DVD recording of Child's forensic interview was obtained from Healing Hearts.

During his deposition, Detective Price testified on his involvement in Child's case, including observing Child's forensic interview and obtaining her underwear for testing. Detective Price observed Child's forensic interview at Healing Hearts through a closed-circuit television in a nearby room. He stated that he believed the interview was age-appropriate and professionally conducted. When Detective Price obtained Child's underwear for testing, he stated that he submitted it to a crime lab in Mississippi to test for any unexpected bodily fluids that may be potential evidence of sexual assault. Detective Price stated that on September 20, 2019, the morning of his deposition, the crime lab informed him that there was no evidence of semen or sperm on the underwear and that no other results were notated. After learning these results, without any other evidence or allegations of abuse by Father, Detective Price determined the investigation of the alleged abuse by Father was closed by the Southaven Police Department.

The next hearing on Mother's petition took place on November 19, 2019. At this hearing, a transcript of Detective Price's deposition and a DVD copy of the forensic interview were entered into evidence. The trial court reviewed Detective Price's deposition and observed the recording of the forensic interview. The court concluded that the forensic interview did not render a disclosure of abuse by Child and that it had no substance on the allegations against Father. After reviewing Detective Price's deposition, the court also concluded that there were no inappropriate fluids found on Child's underwear. No additional testimony was heard at the second hearing.

At various points during the hearings on April 18, 2019, and November 19, 2019, Mother vehemently argued that authorities in Mississippi, including the Southaven Police Department, failed to properly investigate Child's report of abuse. In doing so, she asked the trial court to protect Child despite the lack of physical evidence of abuse. In response, the trial court stated that it could not alter the facts presented to the court or compel an agency in another jurisdiction to conduct further investigations.

Based on a lack of evidence that would substantiate the allegations against Father, the trial court concluded that Mother presented insufficient evidence to modify Father's parenting time. Accordingly, the trial court denied Mother's petition to modify Father's parenting time. The court also stated that each party would be responsible for his or her own attorney's fees. The court reinstated Father's visitation under the parenting plan, beginning with weekly 24-hour visits, but did not credit Father for days that he missed while this case was being litigated.

On December 13, 2019, the trial court entered a written order on its ruling. In the order, the court repeated several of its findings, including that there was no significant medical evidence of abuse, that the forensic interview of Child did not substantiate Mother's claims against Father, and that the analysis of Child's underwear did not indicate the presence of unexpected bodily fluids. In addition to these findings, the court also stated that even with the additional time granted to Mother, there was insufficient evidence to

support her allegations. The court also noted that Mother repeatedly attempted to present evidence of Father's alleged reputation for inappropriate relationships with young females. However, the court concluded that Mother's proof did not support a connection between those claims and any alleged abuse by Father against Child. As a result, the court reiterated that there was insufficient evidence to validate Mother's claims and denied her petition to modify Father's parenting time. The court specifically stated that there was "insufficient evidence to substantiate [M]other's claim for modification of the parenting schedule." The court also stated that, rather than granting Father additional days to accommodate the visitation time he lost during litigation, it was in Child's best interest for Parents to re-conform to the original visitation schedule.

Mother timely appealed.

This Court heard oral arguments on December 8, 2020.[7] In their principal briefs and during oral arguments, there was no discussion on whether a Tennessee court has jurisdiction over this matter. Accordingly, after arguments, this Court entered an order *sua sponte* that directed Parents to file supplemental briefs addressing whether the trial court had subject matter jurisdiction to make a custody determination in this case. Parents filed separate supplemental briefs.

## II.    ISSUES PRESENTED

Mother presents multiple issues on appeal, which we have consolidated and reworded:

1.    Whether the trial court erred in finding that Mother failed to present sufficient evidence to modify the permanent parenting plan;

2.    Whether the trial court erred in denying Mother an opportunity to make an offer of proof; and

3.    Whether the trial court erred by "failing to protect the welfare of the child."

In addition to Mother's issues, Father raises two issues:

4.    Whether the trial court erred in denying Father's request for attorney's fees; and

5.    Whether Father should be awarded attorney's fees on appeal.

---

[7] Due to the COVID-19 pandemic, arguments were conducted by online video. Due to the sensitive nature of this case and for the protection of Child, Father moved to exclude the argument from being live streamed and from being posted online. Father's motion was unopposed and was granted by this Court on December 9, 2020.

For the reasons stated herein, we affirm the trial court's decisions and award Father reasonable attorney's fees for defending this appeal. The case is remanded for the trial court to determine the amount of attorney's fees that should be awarded to Father.

### III. STANDARD OF REVIEW

In cases involving the potential modification of a parenting plan, the Tennessee Supreme Court has instructed:

> In this non-jury case, our review of the trial court's factual findings is de novo upon the record, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002); *Hass v. Knighton*, 676 S.W.2d 554, 555 (Tenn. 1984). We review the trial court's resolution of questions of law de novo, with no presumption of correctness. *Kendrick*, 90 S.W.3d at 569. . . .
>
> A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007). Thus, appellate courts must presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732[ (Tenn. 2005)]; *Kendrick*, 90 S.W.3d at 570; *Hass*, 676 S.W.2d at 555.

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

Additionally, trial judges are permitted broad discretion in determining the details of a parenting plan. *Id.* at 693 (quoting *Suttles v. Suttles*, 748 S.W.2d 427, 429 (Tenn. 1988)). Appellate courts shall not disturb those determinations absent an abuse of discretion. *Id.* A trial court abuses its discretion when it "causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011) (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)).

### IV. DISCUSSION

#### A. Subject Matter Jurisdiction

Based on the unique facts of this case, including the Mississippi divorce litigation, this Court questioned whether a Tennessee court had jurisdiction to determine the custody arrangement for Child. Initially, it was unclear whether a court in Mississippi had jurisdiction to rule on this issue.

On appeal, neither party addressed the issue of whether a Tennessee court had jurisdiction over the custody determination of Child. As a result, after oral arguments were presented, this Court entered an order *sua sponte* that directed Parents to submit supplemental briefs on this issue. Thereafter, Parents filed separate supplemental briefs explaining why Tennessee courts have jurisdiction to determine the custody arrangement for Child. Subsequently, the trial court filed a supplemental exhibit with the Clerk of this Court which contained an order entered by the Chancery Court of Desoto County, Mississippi, on November 10, 2016. In this order, the Desoto County Chancery Court determined that Tennessee courts have subject matter jurisdiction over custody issues involving Child.

The Uniform Child Custody Jurisdiction and Enforcement Act ("UCCJEA") is a jurisdictional statute that resolves interstate child custody disputes by establishing standards for initial custody determinations. *Taylor v. McClintock*, No. M2013-02293-COA-R3-CV, 2014 WL 3734894, at *6 (Tenn. Ct. App. July 25, 2014); *Staats v. McKinnon*, 206 S.W.3d 532, 544 (Tenn. Ct. App. 2006). The Tennessee version of the UCCJEA is codified under Tennessee Code Annotated section 36-6-201, *et seq.* "Tennessee [courts have] jurisdiction to make an initial determination under either Tennessee Code Annotated section 36-6-216(a)(1) or (2)." *Button v. Waite*, 208 S.W.3d 366, 371 (Tenn. 2006).

Parents agree that the Mississippi court correctly determined that Tennessee courts are the proper forum for determining custody issues in this case. We likewise agree with the Mississippi court's jurisdictional determination and proceed to the merits of this case.

### B. Petition to "Modify" the Permanent Parenting Plan

At the outset, Mother argues that the trial court erred in deciding there was insufficient evidence to suspend or modify Father's parenting time under the permanent parenting plan. However, the relevant timeline requires a different analysis than that utilized by the parties. On October 17, 2018, Mother filed her emergency petition to suspend or modify Father's parenting time. At that time, the parties were only following the trial court's oral ruling. The written order that approved the parenting plan was not entered until five days later, on October 22, 2018.

"Once a permanent parenting plan has been incorporated in a final [] decree, the parties are required to comply with it unless and until it is modified as permitted by law." *Armbrister*, 414 S.W.3d at 697. When a party files a petition to modify a parenting plan,

courts must conduct a two-step analysis. Tenn. Code Ann. § 36-6-101(a)(2)(C); *Armbrister*, 414 S.W.3d at 697-98; *Boyer v. Heimermann*, 238 S.W.3d 249, 259 (Tenn. Ct. App. 2007). First, the petitioner must show that a material change of circumstances has occurred. *Armbrister*, 414 S.W.3d at 697-98; *Boyer*, 238 S.W.3d at 259. If a material change of circumstances has occurred, then the court must determine if it is in the best interest of the child to modify the parenting plan. *Armbrister*, 414 S.W.3d at 697-98; *Boyer*, 238 S.W.3d at 259.

Although the parties present this issue as whether the trial court erred in declining to *modify* its initial custody determination, Mother's emergency petition sought to modify an order that was not yet in existence. Meaning, the applicable analysis for this issue is not whether a "material change of circumstances" occurred since the trial court's oral ruling on July 24, 2018.

The "standard for modifying a custody order does not apply when there is no final custody order in existence and the parties are only operating under a temporary order." *In re Samuel P.*, No. W2016-01665-COA-R3-JV, 2018 WL 1046784, at *11 (Tenn. Ct. App. Feb. 23, 2018). When a party seeks to modify a non-final custody order, "it [is] not necessary to show a material change of circumstance[s]." *Id.*; *see also Dishon v. Dishon*, No. M2017-01378-COA-R3-CV, 2018 WL 3493159, at *13 (Tenn. Ct. App. July 20, 2018). Similarly, "the material change of circumstance standard [is] inapplicable where the court's initial custody ruling was only an oral ruling and no final written order had been entered." *In re Samuel P.*, 2018 WL 1046784, at *11 (citing *Hughes v. Hughes*, No. M2013-01558-COA-R3-CV, 2014 WL 7181844, at *8 (Tenn. Ct. App. Dec. 16, 2014)).

In her petition, Mother asserted that Father's alleged abuse against Child constituted a material change of circumstances that justified modifying his parenting time under the permanent parenting plan. The court disagreed, stating that there was insufficient evidence to justify modifying the permanent parenting plan. As we previously stated, the material change of circumstances standard was inapplicable in this instance. However, a "trial court's reference to the material change of circumstance standard when considering a modification of [a] parenting plan [may be] harmless error" if the evidence supports the determination that the parenting plan continues to be in the child's best interest. *Stark v. Burks*, No. W2018-01283-COA-R3-JV, 2019 WL 4132444, at *11 (Tenn. Ct. App. Aug. 30, 3019) (discussing *Dishon*, 2018 WL 3493159, at *14-15); *see also Hughes*, 2014 WL 7181844, at *9.

At trial on her emergency petition, the vast majority of Mother's evidence centered around the report made by Child, that Father "hurt [her] coo-coo" during an unsupervised visit. However, the physical examination at LeBonheur Children's Hospital, the forensic interview, and the test conducted on Child's underwear did not provide evidence of any improper actions by Father. The examining doctor at the hospital noted that there was no evidence of lacerations or abrasions to Child's vaginal area. Thus, the doctor concluded

- 10 -

that there was no indication that Child's vaginal area was ruptured or torn. Similarly, the forensic interview at Healing Hearts yielded confusing and inconclusive statements by Child. Throughout the interview, Child stated that Mother had hurt various parts of her body and that both Mother and Father hurt her vaginal area by wiping it with a towel. Additionally, the test results on Child's underwear showed that there was no evidence of unexpected bodily fluids.

In the absence of physical evidence indicating that Father abused Child, Mother primarily relied on Child's statement that was repeated to Mother, the maternal grandmother, and others throughout the investigation. Based on this lack of evidence, the trial court found that Mother did not substantiate Child's allegations of harm by Father. Due to Child's young age—being just under three years old at the time of the alleged incident—the court determined that her statement was unreliable and unclear. As a result, the court concluded that there was insufficient evidence to *modify* the visitation schedule under the parenting plan. The trial court further concluded that it is in Child's *best interest* to maintain the visitation schedule under the parenting plan rather than grant Father additional days to accommodate the time he lost during litigation.

After reviewing the record, there is no indication that the trial court abused its discretion in reaching its decision. *See Armbrister*, 414 S.W.3d at 693 (stating appellate courts will not disturb a trial court's custody determination absent an abuse of discretion). Whether a parent has physically or sexually abused a child is a question of fact. *See In re Jonathan S. C-B.*, No. M2010-02536-COA-R3-JV, 2012 WL 3112897, at *17 (Tenn. Ct. App. July 31, 2012). Meaning, the trial court's conclusion that there was insufficient evidence to show that Father abused Child is presumed correct. *See* Tenn. R. App. P. 13(d); *Armbrister*, 414 S.W.3d at 692. We give considerable weight to the trial court's determination in this custody dispute, *see Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007), and agree that Mother failed to present sufficient evidence to show that Father abused Child.

The trial court considered the evidence presented at trial and made thorough findings in its final written order. Its determinations will not be disturbed in this appeal. Although the trial court applied an unnecessary modification standard to a petition that sought to modify a non-final custody determination, because the court also made a fresh determination on the best interests of Child, this error was harmless. *See Stark*, 2019 WL 4132444, at *11; *Hughes*, 2014 WL 7181844, at *9. We cannot say that the trial court abused its discretion in reaching this custody determination. Therefore, we affirm the trial court's decision to maintain the progressive visitation schedule under the permanent parenting plan that was incorporated in the trial court's written order on October 22, 2018.

### C. Offer of Proof

Next, Mother takes issue with the trial court's decision to deny her an opportunity

to make an offer of proof on past allegations involving Father. "Generally, when an evidentiary ruling results in the exclusion of evidence, courts must allow an offer of proof." *Taylor v. State*, 443 S.W.3d 80, 84 (Tenn. 2014). (citing *State v. Torres*, 82 S.W.3d 236, 251 (Tenn. 2002)); *see also* Tenn. R. Evid. 103.[8] "An offer of proof serves two primary purposes: (1) informing the trial court about the proof the party is seeking to offer; and (2) creating a record so that an appellate court can review the trial court's decision." *Taylor*, 443 S.W.3d at 84 (quoting *Torres*, 82 S.W.3d at 251). A trial court errs in denying a request to make an offer of proof unless "it is obvious from the record that the proffered evidence could, under no circumstances, be relevant to the issues." *Id.* (quoting *Alley v. State*, 882 S.W.2d 810, 815 (Tenn. Crim. App. 1994)); *see also Day v. Day*, 931 S.W.2d 936, 940 (Tenn. Ct. App. 1996).

At trial, Mother sought to introduce testimony on Father's alleged past relationships and interactions with young women. First, counsel for Mother questioned the maternal grandmother on her reaction to the allegations in this case. After Father objected to this line of questioning, the trial court denied Mother's request to make an offer of proof, concluding that Mother failed to show that there is a relevant correlation between Father's alleged relationships with young women and the allegation in this case.[9] The following exchange took place between Mother's counsel and the court:

> MS. WHITFIELD: . . . It's my allegation that sexual predators have a pattern and history with young women.
>
> . . . . .
>
> THE COURT: Well, . . . the objection is going to be sustained, because I think what you're attempting to do, Ms. Whitfield, is essentially, I'm going to call it just compile or pile on allegations. The more you pile on, the more truth there

---

[8] Rule 103 of the Tennessee Rules of Evidence states:

**(a) Effect of Erroneous Ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and
    . . . . .
    **(2)** *Offer of Proof.* In case the ruling is one excluding evidence, the substance of the evidence and the specific evidentiary basis supporting admission were made known to the court by offer or were apparent from the context.
    . . . . .
**(b) Record of Offer and Ruling.** The court may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling. It shall permit the making of an offer in question and answer form.

Tenn. R. Evid. 103(a)-(b).
[9] Similar to our previous discussion, this conclusion is not disturbed on appeal.

- 12 -

must be to it. Unless there's any substantiation of any of them, the pile doesn't get any more truthful. . . . Unless there are new allegations, unless there's something that she has specific knowledge, then the objection is sustained as to anything that she knew before the date of the last hearing.

. . . . .

MS. WHITFIELD: I feel like to make it on the record, . . . I want it on the record so that when this goes up on appeal it's there. And I have that right. So I would like to make an offer of proof.

THE COURT: And I'm going to sustain Mr. Camp's objection, because I do not feel that it is relevant to this proceeding.

. . . . .

MS. WHITFIELD: Are you prohibiting me from making an offer of proof on the record?

THE COURT: I am.

While Mother was denied an opportunity to make an offer of proof while questioning the maternal grandmother, when Mother testified, she made an offer of proof on the same issue. After Father's counsel objected to relevance, the following discussion took place:

MS. WHITFIELD: . . . there is a pattern of behavior here that's significant of sexual activity between [Father] and young women of all ages, that we have the right to make the record in this case. . . . But I also have heard the Court state what you stated. And if you want me to move on, I will. But I'm *renewing my request* to make an offer of proof for the purposes of the transcript and appellate purposes.

THE COURT: Make your record.

(Emphasis added).

Again, the general rule for when a trial court excludes evidence is that the court

must allow the party to make an offer of proof. *Taylor*, 443 S.W.3d at 84. In this instance, regardless of whether the trial court initially erred in refusing to allow Mother to make an offer of proof when the maternal grandmother testified, any such error was harmless.

After the maternal grandmother testified, during her own testimony, Mother renewed her request and made an offer of proof on Father's alleged past relationships with young women. This offer of proof (1) informed the trial court of the proof Mother sought to offer and (2) created a record for this Court to review the trial court's evidentiary decision. *See id.* (stating the purposes of making an offer of proof). Additionally, in its final order, the trial court specifically stated that the proof did not support Mother's efforts to correlate Father's alleged reputation for inappropriate relationships with young women and the allegations in this case. Further, allowing testimony on Father's alleged reputation would not provide physical evidence of abuse. The trial court would still be forced to primarily rely on a young child's report of alleged acts.

Mother asserts that the trial court's decision must be reversed because it denied her an opportunity to make an offer of proof when the grandmother testified. For the reasons that we have previously mentioned, we find this assertion to be futile. There is no suggestion that the grandmother knew any additional facts about Father's reputation that Mother could not testify to during her offer of proof. Thus, any potential error the trial court made in denying Mother this opportunity was harmless.

### D. Trial Court "Protecting the Welfare of Child"

Next, Mother argues that the trial court failed to protect the welfare of Child by declining to grant her petition after a supposedly inadequate investigation of her claims. Mother asserts that Mississippi agencies, including the Southaven Police Department and the Mississippi Department of Child Protective Services, failed to properly investigate her allegations against Father. She claims that her petition to modify Father's parenting time was improperly denied based on this purportedly deficient investigation. However, Mother fails to present adequate support for this position.

Throughout trial and this appeal, Mother has continually asserted that the "deficient investigation" entitles her to relief in this case. Despite her adamant assertions on this issue, the only authority that Mother cites on appeal is *Keisling v. Keisling*, 196 S.W.3d 703 (Tenn. Ct. App. 2005). Mother's brief includes a single quote from *Keisling* that addresses the gravity of a case when one parent accuses another of sexual abuse against a child:

> Accusations of child sexual abuse by one parent against the other parent presents one of the most difficult issues faced by a trial court. Suspicion of such abuse must be taken seriously and investigated thoroughly, for the consequences to the child of allowing any abuse to continue are grave.

*Id.* at 722.

Mother is correct in that this statement succinctly notes the importance of investigating allegations of sexual abuse against a child. However, Mother's brief conveniently omits the remaining portion of the paragraph that highlights the difficulties and consequences of investigating these claims. The remaining portion states:

> However, mistakenly concluding that a parent has abused his child, when in fact there has been no abuse, has serious consequences as well, including the almost-certain destruction of the parent-child relationship and disgrace to the accused parent. In addition, *determining whether abuse has occurred can be enormously difficult*; there is frequently a paucity of physical evidence, and the alleged child victim may be unable to accurately relate pertinent events. Finally, even investigating the accusation is delicate; the suggestibility of the alleged victim is almost invariably an issue, and heavy-handed or repetitive interrogation or physical examination can itself inflict long-lasting trauma on a child.

*Id.* (emphasis added).

Although Mother believes the Mississippi agencies failed to adequately investigate this case, there were several steps taken to determine whether Father abused Child. A medical examination was performed, but the examining doctor concluded there were no signs of abuse. Detective Price of the Southaven Police Department obtained Child's underwear for forensic testing. The tests showed no evidence of unexpected bodily fluids. A forensic interview with Child was conducted at Healing Hearts Child Advocacy Center in Southaven, Mississippi. Child's statements during this interview were, at best, conflicting. The interview did not yield a clear indication of abuse by Father.

It is not the role of the trial court to investigate a petitioner's claims on his or her behalf and find proof in favor of the petition. To the contrary, a trial court may only consider the evidence and arguments properly presented by the parties. Mother's assertion that the trial court failed to take affirmative steps in her favor is not only unfounded, it is an afront to the history of this case.

At the close of Mother's proof on April 18, 2019, Mother complained that Mississippi authorities "dropped the ball" by failing to properly investigate the case. In response, the trial court, acting in its discretion, granted Mother an additional 30 days to obtain proof from agencies in Mississippi. The court granted Mother this additional time to ensure that Child was not subjected to an unnecessary risk of harm. The parties did not actually return to court for a period of seven months, throughout which Mother had the opportunity to prepare her case. Regardless, the additional time failed to produce evidence

that validated Mother's claims. Instead, the matter was delayed for an additional seven months while Father had no parenting time with Child.

Mother's assertion that the trial court failed to protect the welfare of Child is unreasonable and unfounded. From our review, the trial court properly considered the evidence presented by the parties. As the petitioner, Mother bears the burden of producing sufficient evidence to grant her requested relief. The production of evidence is not the responsibility of the trial court. Accordingly, we see no basis to grant Mother relief for any purported failure by the trial court to protect the welfare of Child in this case.

### E. Attorney's Fees

On appeal, Mother does not renew her request for attorney's fees, but Father seeks to recover fees that he expended at the trial court and on appeal.

Tennessee follows the "American Rule" for awarding attorneys' fees. *See Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017); *Cracker Barrel Old Country Store, Inc. v. Epperson*, 284 S.W.3d 303, 308 (Tenn. 2009). The American rule permits a party in a civil action to recover attorney's fees if: "(1) a contractual or statutory provision creates a right to recover attorney fees; or (2) some other recognized exception to the American rule applies, allowing for recovery of such fees in a particular case." *Cracker Barrel Old Country Store, Inc.*, 284 S.W.3d at 308. This Court will not interfere with a trial court's permissible award of attorney's fees absent a showing of abuse of discretion. *Taylor v. Fezell*, 158 S.W.3d 352, 359 (Tenn. 2005). However, a trial court's "[d]iscretionary decision[] must take the applicable law and relevant facts into account." *Konvalinka v. Chattanooga-Hamilton Cty. Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

Tennessee Code Annotated section 36-5-103(c) permits a court to award a party reasonable attorney's fees in cases involving alimony, child support, or child custody. *Eberbach*, 535 S.W.3d at 475. It states that the prevailing party may be entitled to reasonable attorney's fees in any "proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing." Tenn. Code Ann. § 36-5-103(c). An appellate court's "standard of review [under section 36-5-103(c)] is abuse of discretion for both the issue of whether the party is entitled to an award and the issue of the amount of the fees awarded." *Barnes v. Barnes*, 614 S.W.3d 90, 105 (Tenn. Ct. App. 2019) (quoting *Eberbach*, 535 S.W.3d at 479 n.7).

Father asks this Court to reverse the trial court's decision to deny him attorney's fees that he incurred while the case was before the trial court. Father also asks this Court to award him attorney's fees incurred on appeal. Each request will be discussed in turn.

## 1. Trial Court

Both Mother and Father requested that they be awarded attorneys' fees for the trial court proceedings. Despite their requests, the trial court determined that each party would be responsible for his or her own attorney's fees.

Although Father was the "prevailing party" in that he successfully defended Mother's petition to modify his parenting time, the trial court concluded that both parties' positions had merit and that neither is entitled to an award of attorney's fees. We discern no abuse of discretion by the trial court in reaching this conclusion. Therefore, we shall not overturn its decision on appeal. *See Eberbach*, 535 S.W.3d at 475 (stating whether to award attorney's fees under section 36-5-103(c) "is largely within the discretion of the trial court and . . . absent an abuse of discretion, appellate courts will not interfere with the trial court's finding").

## 2. On Appeal

"[Section] 36-5-103(c) [also] applies to awards of attorney fees incurred on appeal." *Pippin v. Pippin*, 277 S.W.3d 398, 407 (Tenn. Ct. App. 2008). "Deciding whether to award attorney's fees incurred on appeal pursuant to this statute is a matter within the discretion of this Court." *Barnes*, 614 S.W.3d at 105. Exercising our discretion, we find that Father is the "prevailing party" in this appeal. Therefore, he is entitled to reasonable attorney's fees incurred in defending this appeal. Accordingly, this case is remanded to the trial court to determine the appropriate amount of attorney's fees to be awarded.[10]

## V. CONCLUSION

For the aforementioned reasons, we affirm the trial court's decision and remand for further proceedings consistent with this opinion. Costs of this appeal are taxed to the Appellant, A.W., for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE

---

[10] We note, however, that Mother's appeal is not frivolous or devoid of merit. Although she was ultimately unsuccessful, her actions throughout this case have demonstrated a desire to protect Child. We do not fault Mother for taking steps that she believed were necessary to protect the welfare of Child. Mother's proof at trial, and likewise on appeal, is simply insufficient to entitle her to the relief that she seeks.